RECEIVED
USDC, WESTERN DISTRICT OF LA
TONY R. MOORE, CLERK

DATE 3 / 15 / 12

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

FLOYD HAMILTON III

                                   CASE NO.   09-cv-0860(LEAD)
                                                      09-cv-0664(MEMBER)

VERSUS

                                     JUDGE DEE D. DRELL
                                     MAGISTRATE JUDGE JAMES D. KIRK

SHIVANI NEGI, ET AL.

## REPORT AND RECOMMENDATION

On August 25, 2011, the defendants, Shivani Negi, Hollis Reed, Barbara Watkins and the United States of America, filed a Daubert[1] motion seeking a hearing pursuant to Federal Rule of Evidence 702 to determine whether plaintiffs' designated expert witness, Velva Boles, M.D. (Dr. Boles), could serve as an expert witness in this case. (Doc. 116)  A hearing was held on October 3, 2011 before the undersigned.  Present at the hearing were plaintiff, Floyd Hamilton III, Dr. Boles and counsel for defendants, John Broadwell (Broadwell). (Docs. 122 and 123)

During the hearing, Broadwell questioned Dr. Boles about her education, training, experience as an expert witness and the preparation of her report.  At the conclusion of the hearing, the undersigned advised the parties that they would be afforded an opportunity to provide briefs in support of their positions after the transcript of the hearing was filed.

---

[1]   Daubert v. Merrell Dow, 509 U.S. 579 (1993).

On October 7, 2011, Hamilton filed a motion entitled "motion for leave to file memorandum to retain Dr. Velva Boles testimony and request sanctions against Attorney Broadwell". (Doc. 124). In the motion, Hamilton sought to clarify portions of Dr. Boles' testimony and requested the imposition of sanctions against Broadwell based upon previous actions (which were disposed of by the district judge in a prior order) and untrue statements made during the hearing.

On January 11, 2012, the official transcript of the October 3, 2011 hearing was filed in the record (Doc. 138). On January 23, 2012, the undersigned ordered the evidence presented by defendants admitted into the record and ordered the parties submit their briefs in support or opposition of the Daubert motion. (Doc. 140). Defendants filed their motion in support on February 8, 2012, arguing Dr. Boles, her report and testimony were unrealiable in that she was neither qualified nor trustworthy and her report was not based upon sufficient facts or data, was not the product of reliable principles and methods and failed to apply principles and methods reliably to the facts of the case. (Doc. 148).

Hamilton filed his opposition thereto on February 17, 2012 as a motion for leave to file which was granted on March 6, 2012 (Docs. 151, 154 and 155). In it, he argued Dr. Boles was a caring, honest and distinguished physician who was certified in medical investigations and qualified to be an expert witness due to

2

completion of various continuing education courses in how to become an expert witness and because she had been certified as such in prior cases.

The aforementioned motions were referred to the undersigned for report and recommendation.

<u>Law and Analysis</u>

Federal Rule of Evidence 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Expert testimony is admissible only if the proponent demonstrates that: (1) the expert is qualified; (2) the evidence is relevant to the suit; and (3) the evidence is reliable. <u>Watkins v. Telsmith, Inc.</u>, 121 F.3d 984, 988-89 (5th Cir. 1997). In <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579 (1993) the Supreme Court stated that trial courts should act as "gatekeepers" by making "preliminary assessment[s] of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." <u>Id.</u> at 592-93. By performing this function, the trial courts "ensure that any an all scientific testimony or evidence admitted is not only relevant, but reliable." <u>Id.</u> at 589.

It is the party offering the expert testimony who has the responsibility of establishing, "by a preponderance of the evidence that the testimony is reliable." Moore v. Ashland Chemical, Inc. 151 F.3d 269, 276 (5th Cir. 1998), cert. denied, 526 U.S. 1064 (1999).

In Kumho Tire Co. v. Carmichael, 526 U.S. 137 (1999), the Supreme Court found the Daubert analysis[2] to be flexible and stressed the "trial judge's general 'gatekeeping' obligation-applies not only to testimony based on 'scientific' knowledge, but also to testimony based on 'technical' and 'other specialized' knowledge." Id. at 150. "The objective of that [gatekeeping] requirement is to insure the reliability and relevancy of expert testimony. It is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." Id. at 152.

Dr. Boles Qualifications

Dr. Boles testimony is based upon her professional

_____

[2] The Daubert analysis calls for trial courts to consider factors including, but not limited to, whether the expert's theory or techniques: (1) can or have been tested; (2) have been subjected to peer review and publication; (3) have a known or potential rate of error or standards controlling its operation; and (4) are generally accepted in the relevant scientific community in order to determine reliability. Daubert, 509 U.S. at 593-94.

4

qualifications and personal experience.    Thus, they must be examined to determine whether she is in fact qualified to testify as an expert in this matter.

It is evident that Dr. Boles has repeatedly misrepresented her qualifications to employers and courts of law.   She has repeatedly stated that she earned degrees that she has not and she has claimed to have testified as an expert witness in trials in which she never participated.   Based upon these statements, Dr. Boles was allowed to proceed as an expert witness in other cases in other courts. Plaintiff contends her acceptance as an expert in other courts forms the basis as to why she should be admitted as an expert in this case.   However, such "qualifications" cannot be relied upon when based upon misleading testimony.

Though she denied holding a Ph.D. of any kind at the hearing in this case, Dr. Boles has testified in two other legal matters (in which she served as an expert witness) that she obtained a Ph.D. in pathology.   In her deposition taken in the matter Trina Boudoin v. St. Charles Parish Hospital, Civil Action Number 07-6842, U.S. District Court, Eastern District of Louisiana, she stated "well, a forensic physician requires that you have the basic M.D., and then you have to have a research degree.   Mine is in forensic pathology - Ph.D.."  (Doc. 141-2, p. 6).  Additionally, in the matter entitled State of Louisiana v. Errol Victor, Case Number 08-165, 40th Judicial District Court, St. John the Baptist Parish,

State of Louisiana, when asked if she was a pathologist, Dr. Boles stated, " I am a Ph.D. classical pathologist." (Doc. 141-3, p. 12). Though Dr. Boles and plaintiff attempt to claim she was misquoted by the court reporter, I do not find that to be a plausible argument. There are two separate instances in which she claims she obtained a Ph.D. in pathology and neither are claims that she was working to earn the degree. They are both clearly claims that she possesses such credentials.

There is at least another instance in which she claimed to have earned a degree which she did not. Dr. Boles also stated on her application for residency at Tulane University Medical Center (Tulane) that she obtained a Masters in Education from Texas Southern University when in fact she attended that university from August, 1973 through December, 1974 in general studies classes and did not obtain a degree of any kind. (Doc. 141-5, p. 13, 15 and 17).

Her history of misrepresenting her qualifications can also be seen through the certified records submitted by Christus St. Frances Cabrini Hospital (Cabrini). (Doc. 143-2). In her application for medical staff membership and privileges, Dr. Boles stated more than once that she completed a residency at Tulane in Med/Peds. Though she contends she was simply listing it as training, the documents show otherwise. First, on the application, she lists Tulane Medical Center, Med/Peds as a residency attended

6

from "1995 -1998".  No notation of failure to complete the final three months or her resignation therefrom are noted. (Id. at p. 9). Second, and more telling, is the Request for Privileges Form which lists her qualifications as "Licensed M.D. or D.O. who has *successfully completed* an approved residency training program in Internal Medicine."  (Id. at p. 18)(Emphasis added).

Dr. Boles made further misrepresentations on her application when she stated she had not "ever been, [n]or, [was] currently in the process of being, denied, revoked, suspended, reduced, limited, placed on probation, not renewed, or voluntarily or involuntarily relinquished" from academic appointments, clinical privileges or other professional sanctions (to name a few).  (Doc 129-10, p. 10). In fact, she was placed on probation during her residency at Tulane in 1996 (Doc. 141-5, p. 20); her medical responsibilities in the NICU at University Hospital were placed on administrative suspension in 1998 (Doc. 141-5, p. 22); she was suspended in February, 1998 for unexcused absences (Doc. 141-5, p. 24 and 40-41); and March, 1998 she was placed on administrative leave because she ordered an excessive dose of potassium be administered to an infant in her care and for unprofessional behavior to nurses and interns. (Doc. 141-5, p. 23, 29-39 and 41).

Dr. Boles' professional experience is also in question in this case.  Though the record contains documentation which indicates she left her  employment with prior hospitals in good standing and was

7

liked by fellow doctors, the records from Tulane (the only ones with any detail) call her abilities into question.  Over the course of the residency, her abilities were repeatedly called into question by nurses, her peers and professors.  Many attempted to address the issues and counsel her but her performance continued to be called into question.  So much so that in response to Cabrini's request for an evaluation of her professional abilities, Tulane stated her basic medical knowledge, professional judgment, sense of responsibility, ethical conduct, competence, skill and ability to work with others are all "poor".  (Doc. 141-5, p. 4).

Finally, Dr. Boles misrepresented her experience as an expert witness.  In the matter of Errol Victor, Dr. Boles stated she testified as a primary expert witness in three out of state cases and consulted on four. (Doc. 141-3, p. 8).  A statement she confirmed at the conclusion of her deposition testimony.  (Id. at 18).  In the Trina Boudoin matter, she stated she testified as an expert witness in twenty two medical malpractice cases involving allegations by a patient against a healthcare provider. (Doc. 141-2, p. 32).  When further questioned regarding the matter, she clarified her statement and said she evaluated 22 cases but did not testify. (Id. at 33).  She had only testified in two criminal matters. (Id. at 34).

At the hearing in this case, Dr. Boles testified that she had only served as an expert in two cases, the Errol Victor and Trina

Case 1:09-cv-00860-DDD-JDK   Document 162   Filed 03/15/12   Page 9 of 13 PageID #: 3338

Boudoin matters. No mention was made of her alleged involvement in

in a second criminal matter. (Doc. 138, p. 14).

<u>Dr. Boles Report and Testimony</u>

    Also at issue is the reliability of Dr. Boles expert report

and testimony in this case. The report reflects that Dr. Boles

primarily relied upon medical records from September 21, 2006

(roughly a week before the incident in question) through December,

2006.[3] The facts set forth in the report are not fleshed out and

there are no references to specific dates and/or times to support

the facts stated. During the hearing before me, Dr. Boles stated

she reviewed the entire medical record which was voluminous but

only relied upon the documents which are listed in her report. She

did not retain any of these records, as is her custom and practice,

and could not pin-point exactly which documents were relied upon.

    Oddly, Dr. Boles completely excluded from consideration

medical records from the time Floyd Hamilton, Jr. was transferred

from Houston to Alexandria, roughly July 8, 2006, through September

20, 2006. Not only is it curious, since these medical records are

relevant to what his diagnosis, prognosis and physical condition

were in the months leading up to the incident in question, but is

---

    [3] Other records relied upon included Houston VA medical
records from June, 2006 through July 5, 2006 but no reference is
made to Alexandria VA records from July 6, 2006 through September
20, 2006. Dr. Boles also relied upon an affidavit of plaintiff,
Floyd Hamilton III, the Medical and Public Health Law Site, a New
England Journal of Medicine from 2004 regarding medical standard
of care and West's Encyclopedia of American Law.

also suspect because these records include Dr. Boles' notes reflecting her interaction with and treatment of Floyd Hamilton, Jr.  Not only does she fail to reference these records but she fails to make any mention of her personal knowledge of his well being during this time.  What is lacking is telling as these records reflect an 84 year old man in declining health due to suffering a stroke and the neurological deficits which it caused. (Doc. 123, Exhibit 7).  He was not the picture of health as Dr. Boles would have you believe from statements contained in her report.

Plaintiff challenges defendants' assertion that "Dr. Boles completely disregarded the documented and unchallenged medical evidence that Mr. Hamilton's demise was in motion long before he was admitted to the VA" by claiming defendants knew medical records were incomplete and therefore unreliable.  Even if this were true, Dr. Boles failed to provide a statement to that effect in either her report or during the hearing when she was questioned by Broadwell.  Thus, she again failed to either account for and sufficiently explain why she relied only upon certain medical records or explain why these records were unreliable and not considered.

Not only did Dr. Boles fail to consider all of the relevant medical evidence and thus failed to provide an accurate depiction of Floyd Hamilton, Jr. before, at the time of and after the alleged

negligent conduct by Dr. Negi but Dr. Boles also failed to provide details as to how she determined it was Dr. Negi's negligence which caused the injury which led to his death.   At no time does Dr. Boles cite any medical records or tests which definitively show that Floyd Hamilton, Jr.'s condition was stable until September 24, 2006 and thereafter it precipitously declined.   The only test she alluded to was a Glasgow Coma Scale score but she even failed to provide verification of that score in her report.   She also failed to either confirm no other contributing factors existed or rule out all possible contributing factors.   Instead, she conclusively determined Dr. Negi committed malpractice and that her conduct was the sole cause of oxygen deprivation which in turn caused Floyd Hamilton, Jr. to suffer a brain injury, slip into a coma and die.

As the report fails to set forth all facts, provide a complete picture of Floyd Hamilton, Jr.'s medical condition and specifically connect Dr. Negi's alleged deviation from medical standard of care practices as the cause of his neurologic injury, anoxic encephalopathy, coma and eventual death by sepsis, it is unrealiable and cannot be admitted.

<u>Sanctions</u>

Plaintiff argues that Broadwell should be sanctioned for both past conduct and untrue statements made at the hearing and in his <u>Daubert</u> motion.   The past conduct was addressed by the district

judge on July 22, 2010, when he issued an order finding there was no inappropriate ex parte exchange between the undersigned and Broadwell. (Doc. 43). Thus, this argument is moot.

As to plaintiff's claims that Broadwell should be sanctioned for alleging Dr. Boles wrongfully and unethically entered into a contingency contract in exchange for her expert testimony, I accept plaintiff's word that no such contract exists. However, I do not find Broadwell's statements to be sanctionable as he simply asserted an argument that Dr. Boles violated the ethical standards set forth by the American College of Forensic Examiners by entering into a contingency agreement with plaintiff when she prepared the VA complaint.

Accordingly,

**IT IS RECOMMENDED** that the defendants' motion to exclude the testimony of Dr. Velva Boles as an expert witness (Doc. 116) be **GRANTED**.

**IT IS FURTHER RECOMMENDED** that the plaintiff's motion to retain Dr. Velva Boles as an expert witness and for sanctions against John Broadwell (Doc. 124), be **DENIED**.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days

12

after being served with a copy of any objections or response to the District Judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the  proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.   See Douglass v. United Services Automobile Association, 79 F.3d 1415 (5th Cir.  1996).

THUS DONE AND SIGNED in chambers at Alexandria, Louisiana this 15 day of March, 2012.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE